Opinion December 23, 2004






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01070-CR




PERCEY LAFAYETTE GREEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 936132




MEMORANDUM OPINION

          A jury found appellant, Percey Lafayette Green, guilty of possession of
between four and two hundred grams of cocaine, and the trial court assessed
punishment at fifteen years’ confinement. We affirm. 
Background
          On January 14, 2003, Houston Police Officers Jose Estrada and Rick Kennedy
observed Green in a “high crime area,” parked in a car with a known prostitute, in a
hotel parking lot known for narcotic and prostitution activity. Officer Estrada
testified that Green made eye contact with him, dropped his hand, as though reaching
for a weapon, and jumped out the car. Fearing for his safety, Estrada reached for his
gun and told Green to take his hands out of his pockets and go back inside the car. 
Green remained in the car while Officer Kennedy spoke with the prostitute. The
prostitute told Officer Kennedy that Green was her “prostitution trick,” who wanted
to have sex with her.
          While inside the car, Green had his hands on the steering wheel, but then
dropped his hands to “his lap area, around the seat.” Officer Estrada testified that he
felt threatened by Green’s actions. Estrada instructed Green to get out of the car and
asked if Green had anything harmful in his pockets. Green responded, “Yeah, I’ve
got some dope in my pocket.” Estrada reached into Green’s pocket and pulled out a
“cookie” of crack cocaine. The officers asked Green if he had any more drugs, and
Green responded that he had more drugs inside the ashtray of the car. The officers
recovered another “chunk of crack cocaine” from the ashtray. The officers arrested
Green and read him his rights. 
          Officer Estrada ran next door to get the patrol car. While Officer Kennedy
waited at the scene, the prostitute told Kennedy that there were drugs in Green’s hotel
room. Kennedy asked Green for permission to search his hotel room. Green agreed
orally and in writing. When Officer Estrada returned, the officers escorted Green to
his hotel room. Upon entering the room, the officers observed two women inside. 
The officers found twenty rocks of cocaine, marijuana, razors with white residue,
crack pipes, cigarette rolling papers, and weighing scales. 
          On appeal, Green contends that the trial court erred in granting his appointed
counsel’s motion to withdraw; the trial court erred in denying his motion to suppress
the cocaine found in the hotel room; and the evidence is legally and factually
insufficient to affirmatively link him to the cocaine found in the hotel room. 
Right to Counsel
          Green contends that the trial court erred in granting his appointed counsel’s
motion to withdraw and in appointing a new trial counsel. The State originally
charged Green with possession of between four and two hundred grams of cocaine,
a second degree felony. Tex. Health & Safety Code Ann. §§ 481.115(d) (Offense:
Possession of Substance in Penalty Group 1), 481.102(3)(D) (Penalty Group 1)
(Vernon 2003 & Supp. 2004-2005). The trial court determined that Green was
indigent and appointed Mary Acosta to represent him. The State later re-indicted
Green with possession of between four and two hundred grams of cocaine with intent
to deliver, a first degree felony. Tex. Health & Safety Code Ann. §§ 481.112(d)
(Offense: Manufacture or Delivery of Substance in Penalty Group 1), 481.102(3)(D)
(Penalty Group 1) (Vernon 2003 & Supp. 2004-2005). Acosta thereafter moved to
withdraw as attorney of record, stating the basis for her withdrawal: “per certification
requirements—case re-indicted to 1st degree.” The trial court granted Acosta’s
motion to dismiss and appointed Layton Duer as new counsel. 
          Green filed a pro se motion to dismiss Duer, asserting that Green could not
“place his trust” in Duer. Without providing a basis for his contention, Green further
asserted that Duer did not provide effective assistance of counsel. The trial court
denied Green’s motion. During a pretrial hearing, Green again voiced his concerns
about Duer, stating that Duer “has not worked for me.” The trial court explained that
it removed Acosta as Green’s first appointed counsel because Acosta “is not licensed
to represent” Green for the first degree felony charge. Green orally moved to dismiss
Duer, and the trial court denied Green’s motion.
          A trial court has discretion to determine whether counsel should be allowed to
withdraw from a case. King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). 
An indigent defendant’s right to counsel does not compel the trial court to appoint a
counsel agreeable to the accused. Id. Personality conflicts and disagreements
concerning trial strategy typically are not valid grounds for withdrawal. Id. A
defendant does not have the right to his own choice of appointed counsel, and unless
he waives his right to counsel and chooses to represent himself, or shows adequate
reason for the appointment of new counsel, he must accept the counsel appointed by
the court. Garner v. State, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993,
pet. ref’d). 
          Harris County has a “countywide alternative program” for appointing counsel
for indigent defendants, stating that attorneys must “meet specified objective
qualifications, which may be graduated according to the degree of seriousness of the
offense, for providing representation in felony cases.” Tex. Code Crim. Proc. Ann.
art. 26.04 (g)(2)(B)(1) (Vernon 1989) (Procedures for Appointing Counsel). The trial
court stated its reason for granting Acosta’s motion to withdraw as counsel—Acosta
was “not licensed,” i.e., not qualified to represent an indigent defendant charged with
a first degree felony. 
          Green cites Buntion v. Harmon, for the proposition that a trial court may not
substitute counsel based solely on the court’s preference or practice. 827 S.W.2d
945, 949 (Tex. Crim. App. 1992). In Buntion, the Court of Criminal Appeals held
that a trial court erred in arbitrarily replacing an appointed counsel, over the
objections of both counsel and the defendant. Id. The court held that a principled
reason, apparent from the record, must exist to justify a trial court’s sua sponte
replacement of appointed counsel. Id. Buntion is distinguishable from this case
because a principled reason apparent from the record exists to justify the trial court’s
removal of Acosta. The record reflects that the trial court removed Acosta, based on
her request to withdraw, because she was not approved to represent an indigent
defendant charged with a first degree felony. We hold that the trial court did not err
in granting Acosta’s motion to withdraw as counsel and in appointing new trial
counsel. 
Motion to Suppress
          Green contends that the trial court erred in denying his motion to suppress the
cocaine found in his hotel room because his consent to search was a product of an
unlawful detention. In reviewing a trial court’s ruling on a motion to suppress, we
apply the bifurcated standard of review articulated in Guzman v. State, 955 S.W.2d
85, 87-89 (Tex. Crim. App. 1997). If the issue involves the credibility of a witness,
we defer to a trial court’s ruling, as a trial court is in a better position to evaluate the
credibility of witnesses before it. Id. If the trial court is called upon to apply the law
to the facts, and the ultimate resolution of the issue does not turn on an evaluation of
credibility and demeanor of a witness, we review that issue de novo. Id. at 89. 
          Green neither objected at trial nor asserts on appeal that his consent was
involuntary. Instead, Green focuses on whether his detention was lawful. A police
officer may stop and briefly detain a person when the officer has a “reasonable
suspicion” that criminal activity “may be afoot,” even if the officer lacks probable
cause. Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (quoting Terry v.
Ohio, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884 (1968)). In reviewing the officer’s
reasonable-suspicion determination, we look at the “totality of the circumstances” to
decide whether the officer had a “particularized and objective basis” for suspecting
legal wrongdoing. United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695
(1981); see also Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Where
the initial detention is unlawful, any evidence seized subsequent to such a detention
is inadmissible. Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).
          Here, the officers testified that they observed Green in a high crime area,
known for narcotics and prostitution. We recognize that mere presence in a known
high crime area alone is not a basis for an investigative stop. See id. at 303. The
officers also testified, however, that Green was in a car with a known prostitute. See
Acosta v. State 868 S.W.2d 19, 21 (Tex. App.—Austin 1993, no pet.) (holding that
officer’s knowledge of prostitute’s background supports reasonable suspicion for
investigative stop). Officer Estrada testified that Green made eye contact with him,
and dropped his hand, as though reaching for a weapon. See Crooks v. State, 821
S.W.2d 666, 669 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (holding that
defendant’s nervous gestures, such as “ducking down in his seat and acting “nervous
and jittery,” in high crime area support reasonable suspicion for investigative
detention). Estrada testified that Green “jumped out of the car, literally trying to get
away from the car.” See Reyes v. State, 899 S.W.2d 319, 325 (Tex. App.—Houston
[14th Dist.] 1995, pet. ref’d) (holding that flight from authority supports reasonable
suspicion for investigative detention). Estrada testified that he feared for his safety
and felt “threatened” by Green’s actions. 
          Green testified that the officers never asked him about the cocaine. He testified
that the officer pointed his gun at Green, told Green to get out of the car, handcuffed
him, and then searched his pockets. The officers testified, however, that Green
volunteered that he had dope in his pocket. We defer to the trial court because it is
in a better position to evaluate the credibility of witnesses. See Guzman, 955 S.W.2d
at 87-89. The trial court was free to believe the officers and disbelieve Green. 
          We conclude the facts established at the motion to suppress hearing are
sufficient for an investigative detention. Parham v. State, 76 S.W.3d 60, 64 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d). Considering the totality of the
circumstances, we conclude that these facts, and the rational inferences from these
facts, create a reasonable suspicion for a lawful detention. See id. We hold that the
trial court did not err in denying the motion to suppress the cocaine found in the hotel
room. See id.
Affirmative Links
          Green contends that the evidence is legally and factually insufficient to
affirmatively link him to the cocaine located in his hotel room. We review the legal
sufficiency of the evidence by viewing the evidence in the light most favorable to the
verdict to determine if any rational fact finder could have found the essential elements
of the offense beyond a reasonable doubt. King, 29 S.W.3d at 562. We may not
substitute our judgment for that of the fact finder. Id. In our review of the factual
sufficiency of the evidence, we view all of the evidence neutrally, and we ask whether
the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury’s determination, or whether
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). Although
our analysis considers all the evidence presented at trial, the trier of fact is the
exclusive judge of the facts, the credibility of the witnesses, and the weight to be
given to their testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).
          A person commits the offense of possession of a controlled substance if he
knowingly or intentionally possesses a controlled substance, including cocaine. Tex.
Health & Safety Code Ann. §§ 481.115(a) (Offense: Possession of Substance in
Penalty Group 1), 481.102(3)(D) (Penalty Group 1) (Vernon 2003 & Supp.
2004-2005). To establish the unlawful possession of a controlled substance, the State
must show that a defendant (1) exercised care, custody, control, or management over
the controlled substance, and (2) knew that he possessed a controlled substance. See
King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). The State may prove
that a defendant knowingly possessed contraband by offering circumstantial evidence
affirmatively linking him to the contraband. Brown v. State, 911 S.W.2d 744, 746-48
(Tex. Crim. App. 1995). The State need not show that the defendant exercised
exclusive control over the controlled substance, but when the defendant does not have
exclusive control, the State must show additional affirmative links between the
defendant and the contraband. Cedano v. State, 24 S.W.3d 406, 411 (Tex.
App.—Houston [1st Dist.] 2000, no pet.). The affirmative links must raise a
reasonable inference that the accused knew of and controlled the contraband.
Dickerson v. State, 866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d).
          We consider the following factors to establish affirmative links:
(1) the defendant’s presence when the search was executed; 
 
(2) whether the narcotics were in plain view; 
 
(3) the defendant’s proximity to and accessibility of the narcotics; 
 
(4) whether the defendant was under the influence of narcotics when
arrested; 
 
(5) the defendant’s possession of other narcotics when arrested; 
 
(6) the defendant’s incriminating statements; 
 
(7) the defendant’s attempted flight;
 
(8) the defendant’s furtive gestures; 
 
(9) the presence of an odor of the narcotics; 
 
(10) the presence of other narcotics or narcotics paraphernalia; 
 
(11) the defendant’s ownership or right to possession of the place where
narcotics were found; and 
 
(12) whether the narcotics were found in an enclosed place. 
Williams v. State, 859 S.W.2d 99, 101 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d); Chavez v. State, 769 S.W.2d 284, 288-89 (Tex. App.—Houston [1st Dist.]
1989, pet. ref’d). Despite this list of factors, no set formula exists; rather, the totality
of the circumstances establishes affirmative links. Sosa v. State, 845 S.W.2d 479, 483
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). 
          The officers found cocaine in Green’s hotel room. It is undisputed that the
hotel room belonged to Green. Green contends that any ownership rights in the hotel
room are insufficient to support his possession of the cocaine because two females
were present in the room during the search. Green cites Guiton v. State, which held,
“The fact that a defendant has rented the premises upon which narcotics are found,
if also occupied by others, is not usually sufficient in and of itself to justify a finding
of joint possession.” 742 S.W.2d 5, 8 (Tex. Crim. App. 1987) (holding evidence
insufficient to support conviction). As in Guiton, we must look for “additional
independent facts and circumstances” affirmatively linking the accused to the
contraband. Id. 
          In addition to Green’s undisputed ownership of the hotel room, additional
independent facts and circumstances affirmatively link Green to the cocaine. Officer
Kennedy testified that he found “the majority” of the drugs on the bed; therefore, it
appears from the record that the drugs were in plain view.


 Green possessed other
narcotics when the officers arrested him. The officers found cocaine in Green’s
pocket and in his car ashtray. The officers also found other narcotics and narcotics
paraphernalia in the hotel room, such as marijuana, razors with white residue, crack
pipes, cigarette rolling papers, and weighing scales. Moreover, the quantity of
contraband found is a factor in determining affirmative links. Roberson v. State, 80
S.W.3d 730, 740 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (considering
twenty four grams of cocaine in determining affirmative links). Here, the officers
found twenty cocaine rocks, referred to as “$5 rocks,” in the hotel room. Viewing
this evidence in the light most favorable to the verdict, a rational jury could have
found beyond a reasonable doubt that Green knowingly and intentionally possessed
the cocaine. We therefore hold that the evidence is legally sufficient to affirmatively
link Green to the cocaine found in the hotel room. 
          With regard to factual sufficiency, we review all the evidence neutrally. Green
contends on appeal that the evidence is factually insufficient because others were
present in the hotel room. Green did not testify during the guilt/innocence phase. 
Green’s testimony at the motion to suppress hearing centered on the detention. He
did not testify about the narcotics found at the hotel room, although he admitted that
he owned the hotel room. Viewing all of the evidence neutrally, the proof of guilt is
not greatly outweighed by the fact that others were present in the hotel room. We
therefore hold that the evidence is factually sufficient to affirmatively link Green to
the cocaine found in the hotel room. 
Conclusion
          We affirm the judgment of the trial court. 
 

                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).