**Opinion issued on October 28, 2014**



In The

# Court of Appeals

For The

## First District of Texas

———————————————

### NO. 01-13-00627-CR

———————————————

**DARNELL RAMAJITA ADKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1362336**

---

## MEMORANDUM OPINION

Appellant Darnell Ramajita Adkins was charged with unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE § 46.04 (West 2011). Adkins moved to suppress a firearm that Officer M. Delacerda recovered from Adkins's truck.

The trial court denied the motion, and Adkins pleaded guilty and was sentenced to four years in prison. In two issues, Adkins contends that the trial court abused its discretion in denying his motion to suppress because Officer Delacerda detained him without reasonable suspicion and searched his truck illegally. We affirm.

## Background

After Adkins was charged with unlawful possession of a firearm by a felon, he filed a pre-trial motion to suppress the firearm. The trial court denied the motion after considering the affidavits of Officer Delacerda, Adkins, and a witness, Larry Johnson.

Officer Delacerda averred that he and Officer D. Morelli were investigating a "burglary of a motor vehicle" in which an FBI agent's firearm and badge were stolen at a gas station in a high-crime area. Officer Delacerda averred that upon arriving at the gas station, he saw a black truck parked in the middle of the lot. According to Officer Delacerda, Adkins was standing behind the truck's door, and became "very nervous" when he saw Delacerda. Delacerda saw Adkins reach into his waistband and place something in the truck in the area in which the driver sits.

Officer Delacerda averred that he found Adkins' reaction "suspicious" and approached Adkins to ask him about the burglary of the FBI agent. Adkins responded that he knew the officers were looking for Delvin Clemons and that Adkins knew who Clemons was. Based on this response, Officer Delacerda

2

believed Adkins could be a witness to the burglary and requested Adkins's identification.

Adkins produced his driver's license, and Officer Delacerda asked Adkins to follow him to his patrol car. A criminal background check identified Adkins as a convicted felon. Officer Delacerda asked Adkins whether he had anything illegal inside his truck and Adkins responded that "the only thing inside was his aunt's prescription medication." When Officer Delacerda asked if Adkins had anything else, Adkins offered to show Delacerda the medicine. According to Officer Delacerda, Adkins opened the truck's driver's side door and removed a blue lunch bag, which contained medications prescribed to Thelma Jones.

When Adkins opened the truck's door, Officer Delacerda saw two things that he believed gave him probable cause to arrest Adkins. First, Delacerda "was able to see in plain view the barrel of a pistol sticking out from underneath the driver's side seat," which was within the area where Officer Delacerda had earlier observed Adkins place something. Officer Delacerda "could tell that [Adkins] had just placed the pistol there because it was balanced on an uneven surface under the seat and would have fallen down if the vehicle had been in motion." Officer Delacerda believed that the firearm in the truck may have been the one taken from the FBI agent. Second, Officer Delacerda saw a cigar, which appeared to be wet with a dark syrup substance, in the ashtray of the truck. Based on his experience,

Officer Delacerda believed this substance to be promethazine, a prescription medication in the blue bag Adkins retrieved from the truck. Upon seeing the firearm and cigar, Officer Delacerda "placed [Adkins] in handcuffs for suspicion of a controlled substance and unlawful possession of a firearm by a felon." Officer Delacerda also averred that after he placed Adkins in the back seat of the patrol car and read Adkins his rights, Adkins "agreed and eventually admitted to dipping the cigar in the promethazine syrup and possessing a handgun."

Adkins's affidavit recited a different set of facts. He averred when he got out of his truck, Officer Morelli "motioned with his finger [for Adkins] to come towards him," and asked if Adkins was Clemons. Adkins stated that he was not Clemons and presented identification. Adkins averred that the officer[1] said that he wanted to make sure that Adkins did not have anything illegal in his truck, handcuffed Adkins, and placed him in the patrol car.

Adkins averred that the officer walked Adkins to his truck after Adkins mentioned having prescription medication. Adkins averred that Officer Delacerda opened the driver's side door, looked under the driver's seat, and found a firearm, but that the firearm "was not visible without looking under the seat." According to Adkins, Officer Morelli continued asking about Clemons, and Officer Delacerda arrested Adkins after he found the firearm.

---

[1]   Adkins did not identify the officer by name.

4

A bystander, Larry Johnson, corroborated much of Adkins's statement in his own affidavit. According to Johnson, Officer Delacerda motioned with his finger for Adkins to come towards him. Officer Delacerda questioned Adkins, motioned for Adkins to get in the back seat of the patrol car, took Adkins's keys, opened the truck, and searched it.

The trial court denied Adkins's motion to suppress and did not enter written findings of fact and conclusions of law.

## Discussion

In two issues, Adkins contends that the trial court abused its discretion in denying his motion to suppress because Officer Delacerda lacked reasonable suspicion to detain him and even if reasonable suspicion existed, Officer Delacerda illegally searched Adkins's truck.

### A. Standard of Review

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence. *Weide v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, it is for the trial court to determine whether the officer or the appellant's version of the events was true. *Walker v. State*, 588 S.W.2d 920, 924 (Tex. Crim. App. 1979). "[T]he court may determine the merits of [the] motion [to

5

suppress] on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court." TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (West 2006); *see State v. Brunner*, 917 S.W.2d 103, 105 (Tex. App.–San Antonio 1996, pet. ref'd). Unless a trial court abuses its discretion by making a finding unsupported by the record, we defer to its findings and will not disturb them on appeal. *Flores v. State,* 177 S.W.3d 8, 14 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd).

If the trial judge does not enter findings of fact, the reviewing court must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Weide*, 214 S.W.3d at 25. But we review de novo the trial court's application of the law to those facts. *Ford*, 158 S.W.3d at 493. A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State,* 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State,* 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

**B.     Did Officer Delacerda have reasonable suspicion to detain Adkins?**

**1.  Applicable Law**

A police officer is permitted to stop and temporarily detain a person in order to conduct an investigation if the officer, based on his experience, has a reasonable

suspicion that an individual is violating the law. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968); *Ford*, 158 S.W.3d at 492 (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). "'Reasonable suspicion' exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883).

"This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *Garcia*, 43 S.W.3d at 530. Reasonable suspicion is determined by considering whether the officer had "some minimal level of objective justification for making the stop." *Foster*, 326 S.W.3d at 613. An officer is entitled to rely on all of the information obtained during the course of his contact with the detainee in developing the articulable facts justifying continued investigatory detention. *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). Therefore, we consider the totality of the circumstances when making a reasonable suspicion determination. *Ford*, 158 S.W.3d at 492–93.

## 2. Analysis

Adkins argues that Officer Delacerda improperly detained Adkins because the detention was based solely on Delacerda's observation that Adkins was acting nervous. In support of his argument, Adkins cites to cases in which courts held that nervous behavior alone does not establish reasonable suspicion. *See Munera v. State*, 965 S.W.2d 523 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *U.S. v. Spinner*, 475 F.3d 356 (D.C. Cir. 2007); *U.S. v. Jenson*, 462 F.3d 399 (5th Cir. 2006); *U.S. v. Richardson*, 385 F.3d 625 (6th Cir. 2004); *U.S. v. Perkins*, 348 F.3d 965 (11th Cir. 2003); *U.S. v. Santiago*, 310 F.3d 336 (5th Cir. 2002). However, unlike the cases cited by Adkins, here Officer Delacerda articulated several specific facts beyond mere nervousness that led him to detain Adkins.

First, Officer Delacerda was on the scene of a burglary, in a high-crime area. "A 'high-crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000) (citing *Adams v. Williams*, 407 U.S. 143, 144, 147–48, 92 S. Ct. 1921, 1922–24 (1972)); *see also Gregory v. State*, 175 S.W.3d 800 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (high crime area was relevant in holding reasonable suspicion where officer performed pat-down search of three individuals standing behind illegally parked car).

Second, Officer Delacerda detained Adkins for the purpose of questioning

8

him while investigating a "specific and known crime"—the burglary of the FBI agent. *See Illinois v. Lidster*, 540 U.S. 419, 423–28, 124 S. Ct. 885, 887–891 (2004) (holding police checkpoint established for purpose of investigating hit and run homicide that occurred in same area was constitutional); *Sanders v. State*, 992 S.W.2d 742, 752 (Tex. App.—Amarillo 1999, pet. ref'd) ("[A]uthority and logic indicate that proximity to a crime scene may be a factor influencing the existence of reasonable suspicion.").

Third, Officer Delacerda averred that he saw Adkins make a furtive movement upon seeing the officers—Adkins reached into his waistband and placed something on the truck's floorboard. An officer's testimony of articulated facts about a defendant's furtive movements is sufficient to establish reasonable suspicion. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (en banc) (courthouse security guard's testimony about nervous behavior and furtive attempt to evade metal detectors established reasonable suspicion).

Having considered the totality of the circumstances, we conclude that the trial court did not abuse its discretion by implicitly finding that Officer Delacerda had reasonable suspicion to detain Adkins. *See Amorella v. State*, 554 S.W.2d 700, 701–03 (Tex. Crim. App. 1997) (reasonable suspicion existed where defendant was with two other men in car with trunk open outside business after hours, in a known high-crime area for burglaries, and group immediately closed trunk and left after

seeing officers); *Gregory*, 175 S.W.3d 803 (reasonable suspicion established where officer observed three individuals standing behind car parked illegally in cul-de-sac known as high-crime area and individuals made furtive attempt to hide behind car when officer pulled up in patrol car); *Crooks v. State*, 821 S.W.2d 666, 669 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (reasonable suspicion existed where defendant was sitting in vehicle in empty parking lot in area known for drug trafficking and ducked in driver's seat when officer approached).

**C.    Did Officer Delacerda have probable cause to search Adkins's truck?**

Adkins contends that even if Officer Delacerda had reasonable suspicion to detain him, because Officer Delacerda illegally searched the truck, the trial court abused its discretion in denying his motion to suppress.

### 1.  Applicable Law

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 356, 88 S. Ct. 507, 514 (1967)).  One valid exception to the rule that a search must rest upon a warrant is the automobile exception, which provides that a law enforcement officer may

10

conduct a warrantless search of a motor vehicle if he has probable cause to believe the vehicle contains evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 155-56, 45 S. Ct. 280, 286 (1925); *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994); *see also Ackenback v. State*, 794 S.W.2d 567, 572 (Tex. App.— Houston [1st Dist.] 1990, pet. ref'd).

Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). Further, an officer's observation of contraband or evidence of a crime in plain view inside a vehicle can be used to establish probable cause to seize the contraband or evidence. *Dahlem II v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Colorado v. Bannister*, 449 U.S. 1, 4, 101 S. Ct. 42, 44 (1980) (per curiam)). As long as there is a "substantial basis" in the record to support the trial court's ruling of probable cause, it is impervious to reversal. *State v. Carter*, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds*, *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex. Crim. App. 1997) (en banc).

## 2. Analysis

Officer Delacerda and Adkins offered conflicting affidavits. According to

11

Officer Delacerda, Adkins voluntarily opened the truck's driver's side door to show Officer Delacerda the prescription drugs and the firearm was in plain view, sticking out from under the driver's seat where Officer Delacerda had earlier observed Adkins place something in the truck. Adkins, by contrast, averred that the firearm was not in plain view and that the officers took his keys, opened the driver's side door, and searched the truck before discovering the hidden firearm.

It is the province of the trial court to resolve conflicts between affidavits, and we assume that the trial court made implicit findings that support its ruling as long as those implied findings are supported by the record. *See Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). Here, the trial court credited Officer Delacerda's testimony to the effect that he saw the firearm and syrup-dipped cigar in plain view inside Adkins's truck. Accordingly, the trial court correctly concluded that Officer Delacerda had probable cause to seize the firearm and other evidence. *See Barnes v. State*, 424 S.W.3d 218, 22, 225–26 (Tex. App.—Amarillo 2014, no pet.) (holding probable cause to search vehicle where officer observed jar filled with what appeared to be marijuana sitting in plain view on back seat of car while walking around vehicle); *Crooks*, 821 S.W.2d at 669 (holding probable cause to search vehicle where officer observed barrel of firearm in plain view sticking out from under driver's seat while car door was open).

12

We overrule Adkins's first and second issues.

## Conclusion

We affirm the trial court's judgment.

Rebecca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.
Do not publish. TEX. R. APP. P. 47.2(b).